IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PAMELA BALLARD, ) | |
| ) | Civil Action File No.: |
| Plaintiff, ) | NO: 1:17-CV-02316-CAP |
| ) | |
| vs. ) | |
| ) | |
| WILSHIRE INSURANCE COMPANY, ) | |
| and JC PROPST TRUCKING LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S DAUBERT MOTION AND MOTION IN LIMINE TO EXCLUDE, OR IN THE ALTERNATIVE, LIMIT THE EXPERT TESTIMONY OF MICHAEL CONNELLY AND DR. MATTHEW NORMAN, AND REQUEST FOR DAUBERT HEARING**

In support of Plaintiff's Daubert Motion and Motion in Limine to Exclude, or in the Alternative Limit, the Expert Testimony of Michael Connelly and Dr. Matthew Norman, and Request for Daubert Hearing (the "Motion"), Plaintiff shows the following:

*Michael Connelly*

Defendants will offer Michael Connelly as an expert to testify in this matter. His opinions were provided in the form of a report attached herewith. (Report of

1

Michael Connelly ["Connelly Rep."], Exhibit 2 to the Motion.) Specifically, Mr. Connelly's opinions are as follows:

1. That the driver qualification irregularities identified by Plaintiff were "not relative" to the collision at issue herein, and that there are industry studies that suggest a lack of correlation between driver qualification irregularities and motor vehicle collisions. (Connelly Rep. at Opinions § 1.)

2. That Mr. Helms was a qualified driver because he had not been convicted of a disqualifying offense during the relevant period and the motor carrier had no authority to disqualify him. (Connelly Rep. at Opinions § 2.)

3. That Mr. Helms was medically qualified to drive because he had listed a medication he apparently failed to disclose in his medical examination in the questionnaire for a prior medical examination. (Connelly Rep. at Opinions § 3.)

4. That there is "no evidence" Mr. Helms' medical condition contributed to the collision. (Connelly Rep. at Opinions § 4.)

5. That Mr. Helms was driving in an attentive and alert manner at the time of the collision. (Connelly Rep. at Opinions § 5.)

      6.   That Plaintiff failed to drive in an attentive and alert manner at the time of the collision. (Connelly Rep. at Opinions § 6.)

The proponent of an expert witness bears the burden of establishing the admissibility of his opinions. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Before expert testimony may be admitted as evidence at trial under Rule 702 of the Federal Rules of Evidence ("FRE"), the Court must assess the evidence. *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 596-97, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In the Eleventh Circuit, the Court must decide whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Defendants have not met their burden with respect to Mr. Connelly. To begin with, Mr. Connelly's fourth, fifth, and sixth opinions are simply his personal opinion, based on a reading of deposition transcripts, as to who was at fault in the collision. While it is certainly proper under FRE 704(a) for expert testimony to address an ultimate issue in the case under the federal rules, there is no indication

here that Mr. Connelly engaged in any expert analysis at all in reaching these conclusions. Put within the framework of the analysis provided for under Daubert, there is no indication or even suggestion that his specific qualifications were necessary in the rendering of these opinions, that he applied any specific methodology in reaching these opinions, or that he reached any conclusions regarding matters with respect to which a trier of fact might benefit from his assistance. Indeed, Mr. Connelly himself recognizes that, dependent as he is on the review of transcripts, he is in a less advantageous position to make these determinations than the triers of fact will be, when he states that "one cannot accurately surmise the reason(s) based on the current evidence." (Connelly Rep. § 6.) The trier of fact will be better situated than Mr. Connelly to consider the matters addressed in his fourth, fifth, and sixth opinions.

With regard to his third opinion, it addresses an issue that is outside of Mr. Connelly's area of expertise. Mr. Connelly is not a medical examiner; his expertise is in trucking safety programs and regulation. He is not qualified to state an opinion regarding whether Mr. Helms would have been medically qualified to drive, if he had made the proper disclosures to the medical examiner. Moreover, to the extent that this third opinion amounts to simply a legal conclusion regarding the requirements of federal law with respect to qualifying drivers employed by motor

carriers, it is impermissible as such. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness...may not testify to the legal implications of conduct; the [district] court must be the jury's only source of law."). Finally, to the extent that it is a comment on the existence or lack of evidence relating to whether a medical issue caused the collision, there is no suggestion as to why Mr. Connelly might be better positioned to make that determination than a lay juror. Mr. Connelly's second opinion is, similarly, the statement of a legal conclusion regarding driver qualification under federal law and, as such, should be excluded.

Finally, Mr. Connelly's first opinion should be excluded to the extent it is simply an opinion regarding proximate causation rendered independent of any expertise or methodology, that would not assist a lay juror in coming to his or her own conclusion about whether the deficiencies in driver qualification identified by Plaintiff's own expert might be evidence relevant to causation.

Mr. Connelly does provide general industry information that might not otherwise be accessible to a lay juror in identifying a study purportedly showing that poor driver qualification processes are allegedly associated with lower crash risks. However, the referenced study is designed to criticize the way that the "CSA Driver Fitness BASIC" scoring is conducted, as opposed to being support for the argument that compliance with driver qualification regulations is necessarily irrelevant to the

5

question of carrier safety. (*See*, ATRI, "Compliance, Safety, Accountability: Analyzing the Relationship of Scores to Crash Risk," attached to Connelly Rep. as an exhibit thereto ["The ATRI Report"].)

For example, the report itself states in its Executive Summary that "a simple correlational approach may simply be unable to detect the existence of a relationship due to the nature of the data under consideration." (ATRI Report at vi.) The authors themselves state that "[t]his type of parametric analysis is subject to numerous statistical assumptions, nearly all of which were violated, raising questions about the studies' conclusions." (*Id*. at vi, n.1.) The actual conclusion of the study is not that driver fitness bears no relationship to carrier safety, but that "the SMS methodology for determining percentile scores is not calibrated correctly for the...Driver Fitness BASICs." (*Id*. at viii.) Indeed, the assumption of the authors is that a correctly calibrated Driver Fitness BASIC would show a positive correlation between lack of driver fitness and crash rates. Potential issues with the calibration of these scores identified by the authors of the ATRI Report include a large carrier bias in data collection, regional variations in roadside inspections, and scoring based on insufficient relatively few observations of the carrier at roadside inspections. (See ATRI Report at 4 and 35.)

Finally, to the extent that what is at issue is simply a legal conclusion respecting relevance, evidence of non-compliance with regulations could be relevant to the jury on the issue of credibility.

*Dr. Matthew Norman*

Defendants will offer Dr. Matthew Norman as an expert to testify in this matter. His opinions were provided in the form of a report attached herewith. (Report of Matthew W. Norman, M.D. ["Norman Rep."], Exhibit 3 to the Motion.) Specifically, Dr. Norman's opinion is that Plaintiff does not suffer from Post-Traumatic Stress Disorder ("PTSD") or any other mental illness related to the June 15, 2016 accident. (Norman Rep. at 10.)[1]

In his report, Dr. Norman acknowledges that Plaintiff reports symptoms that meet the applicable diagnostic criteria for PTSD. (Norman Rep. at 8-9.) He also acknowledges that multiple clinicians have diagnosed Plaintiff with PTSD, using her self-report. (Norman Rep. at 9.) He criticizes the reliance of these clinicians on self-reporting based solely on an unpublished dissertation, the author of which apparently concludes that PTSD is "easier to fake" than other mental illnesses. He then asserts,

---

[1] He also notes that Plaintiff was cited in the accident and "may be considered by some to be at fault," facts of doubtful relevance to his conclusions and outside his area of expertise. (Norman Rep. at 2.)

7

without supporting citation, that psychological testing is "ineffective at determining PTSD in the context of litigation."

Dr. Norman goes on to mischaracterize the reports of Drs. Shindell and Sass as showing based on objective testing that Plaintiff has exaggerated her symptoms. Although these doctors can testify for themselves, and Dr. Shindell did testify that Plaintiff may have exaggerated her symptoms, Dr. Sass's report concluded that "no evidence of intentional underperforming was observed." (Independent Medical Evaluation of Dr. John Sass ["Sass Rep."], Exhibit 4 to the Motion, at 15.)

Dr. Norman does not appear to have administered any tests or applied any methodology in assessing whether Plaintiff's self-report provides a valid basis for a PTSD diagnosis. (Compare Sass Rep. at 7-8.) Instead, he bases his conclusion almost entirely on his opinion that self-reporting based assessments are useless in litigation, which in turn is based solely on an unpublished dissertation. (Norman Rep. at 9-10.) He also simply speculates that Plaintiff may have personal knowledge or experience, either from prior treatment or from her work history, that would assist her in misreporting her symptoms. (Norman Rep. at 10.) (*See also*, Deposition of Tracey Marks, MD, Exhibit 5 to the Motion at 72-74.)

As with Mr. Connelly, Dr. Norman does not provide much in the way of actual expert testimony and does not appear to have engaged in much of anything that could

8

appropriately be called a "methodology." He simply points out that testing for PTSD is based on self-reporting, a fact that Defendants counsel can and no doubt will bring out in cross-examination of any expert proffered by Plaintiff. The only "learned treatise" he brings to the table is an unpublished, non-peer-reviewed dissertation.[2] His testimony does not meet the necessary standard for admission of expert testimony in the Eleventh Circuit. (*See also* Glancy GD and M Saini, "The Confluence of Evidence-Based Practice and Daubert Within the Fields of Forensic Psychiatry and the Law," J. Am. Acad. Psychiatry Law 37(4):438-41 (2009) (arguing for transparent and evidence-based methodology in forensic practice), filed with the Motion as Exhibit 6; and "AAPL Practice Guideline for the Forensic Assessment," Journal of the American Academy of Psychiatry and law, Vol 43, No. 2, 2015 Supplement, filed with the Motion as Exhibit 7, at S43 (identifying appropriate methodologies for identification of malingering).)

      WHEREFORE, Plaintiff respectfully prays that the Court enter an order to limit or exclude the testimony of Michael Connelly and Dr. Matthew Norman in this matter, and that the Court grant such other and further relief as it deems proper and just.

---

[2] Plaintiff has requested from Defendants but has not received a copy of this dissertation.

Respectfully submitted, this 20th day of November, 2018.
                    **STEVEN LEIBEL, P.C.**


By:   */s/Steven Leibel*
      STEVEN LEIBEL
      Georgia Bar No. 445050
      PAUL MENAIR
      Georgia Bar No. 502018
      *Attorneys for Plaintiff*

6150 GA Hwy 400, Suite C
Cumming, Georgia 30028
(404) 892-0700
(770) 844-0015, Facsimile
steven@leibel.com
paul@leibel.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PAMELA BALLARD, ) | |
| ) | Civil Action File No.: |
| Plaintiff, ) | NO: 1:17-CV-02316-CAP |
| ) | |
| vs. ) | |
| ) | |
| WILSHIRE INSURANCE COMPANY, ) | |
| and JC PROPST TRUCKING LLC, ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S DAUBERT MOTION AND MOTION IN LIMINE TO EXCLUDE, OR IN THE ALTERNATIVE, LIMIT THE EXPERT TESTIMONY OF MICHAEL CONNELLY AND DR. MATTHEW NORMAN, AND REQUEST FOR DAUBERT HEARING has been filed electronically with the Clerk of the Court, this 20th day of November, 2018, using the CM/ECF System, and that a copy of the document will automatically be sent to the CM/ECF attorneys for Defendants named below:

11

Roger E. Harris, Esq.
Yamisi James, Esq.
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree Street, NE, Suite 300
Atlanta, GA  30309

Dated this 20th day of November, 2018.

                                       **STEVEN LEIBEL, P.C.**

                                  By:  */s/Steven Leibel*
                                       STEVEN LEIBEL
                                       Georgia Bar No. 445050
                                       PAUL MENAIR
                                       Georgia Bar No. 502018
                                       *Attorneys for Plaintiff*

6150 GA Hwy 400, Suite C
Cumming, GA 30028
(404) 892-0700, Phone
(770) 844-0015, Fax
steven@leibel.com
paul@leibel.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PAMELA BALLARD, ) | |
| ) | Civil Action File No.: |
| Plaintiff, ) | NO: 1:17-CV-02316-CAP |
| ) | |
| vs. ) | |
| ) | |
| WILSHIRE INSURANCE COMPANY, ) | |
| and JC PROPST TRUCKING LLC, ) | |
| ) | |
| Defendants. ) | |

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

Pursuant to Local Rule 7.1D, the undersigned certifies that the foregoing document has been prepared in one of the font and point selections approved by the Court in Local Rule 5.1B.

Dated this 20th day of November, 2018.

**STEVEN LEIBEL, P.C.**

By:  /s/Steven Leibel
    STEVEN LEIBEL
    Georgia Bar No. 445050
    PAUL MENAIR
    Georgia Bar No. 502018
    *Attorneys for Plaintiff*

13

6150 GA Hwy 400, Suite C
Cumming, GA 30028
(404) 892-0700, Phone
(770) 844-0015, Fax
steven@leibel.com
paul@leibel.com